IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED
APR 02 2008
JOHN F. CORCORAN, CLERK
BY: /s/ DEPUTY CLERK

| | |
|---|---|
| GARRETT S. PAGANS, JR., <br>     Plaintiff, | ) <br> ) <br> ) |
| v. | )    Civil Action No. 7:07CV197 <br> ) |
| MICHAEL J. ASTRUE, <br> COMMISSIONER OF SOCIAL <br> SECURITY, <br>     Defendant. | )    By:    Hon. Michael F. Urbanski <br> )             United States Magistrate Judge <br> ) <br> ) <br> ) |

## MEMORANDUM OPINION

Plaintiff Garrett S. Pagans, Jr., ("Pagans") filed this action challenging the final decision of the Commissioner of Social Security denying his claim for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("Act"). 42 U.S.C. §§1381-1383f. Jurisdiction is based upon 42 U.S.C. § 405(g). The parties consented to the jurisdiction of the undersigned magistrate judge, and the case is before the court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, it is clear that the decision of the Commissioner is supported by substantial evidence. The administrative record contains no opinions suggesting that Pagans is disabled, and the opinions of state agency physicians as to Pagans' physical and mental ability to work are both uncontradicted and consistent with Pagans' treatment records. For these reasons and as detailed below, the Commissioner's motion for summary judgment is granted and Pagans' motion for summary judgment is denied.

# I.

Review of a final decision regarding disability benefits under the Act is limited to a determination of whether there is substantial evidence to support the Commissioner's findings. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). The court must not undertake a de novo review of the Commissioner's decision, re-weigh the evidence in the administrative record, or make its own independent findings. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972). Even if the court may have decided the case differently based on the evidence in the record, it must defer to the Commissioner's decision if it is supported by substantial evidence. Id. Therefore, if substantial evidence exists, the final decision of the Commissioner must be affirmed. Richardson v. Perales, 402 U.S. 389, 401 (1971); Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence is such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion of a reasonable mind. Richardson, 402 U.S. at 400. It is clear that substantial evidence exists in this case.

# II.

Pagans was born in 1979, dropped out of school after the 8th grade and has not obtained a GED. He was 27 years old as of the date of the ALJ's decision and has past work experience as a laborer doing drywall and block work, as a grocery bagger and working in a restaurant. Pagans lives with his mother and has a few friends. He is able to drive and largely occupies himself with television and video games. (R. 409, 342) Pagans drinks six to twelve beers a day, two to three days a week, but does not consider this level of consumption to be a problem. (R. 343) (Administrative Record [hereinafter R.] at 402)

2

Pagans' relatively short life has been marked by a series of unfortunate accidents. Pagans hurt his neck in a car accident some years ago, (R. 160), and again in 2001 when he was dropped on his neck in a wrestling accident in his front yard. (R. 98) The medical records note that Pagans suffered from pain in his right hip and thigh which he attributed to being body slammed in 2002. (R. 174) Pagans hurt his knee in a bar brawl in July, 2004, (R. 162), and was injured again in a fight in December, 2005 when he was hit multiple times about his face and head. (R. 195) Pagans sustained relatively minor injuries to each of his hands in separate incidents involving punching persons and objects in 2004 and 2005. (R. 171, 159)

Pagans claims disability since August 2004. Pagans' application for benefits was rejected by the Commissioner, and an administrative hearing was convened before an Administrative Law Judge ("ALJ") on September 15, 2006. (R. 27-28, 398-422) In a written decision issued December 21, 2006, the ALJ found that Pagans was not eligible for SSI payments. (R.14-21) The Appeals Council denied Pagans' request for review, and this appeal followed. (R. 6-8)

Pagans argues that the ALJ improperly evaluated Pagans' complaints of pain and erred in concluding that his complaints of pain and physical limitations were not credible. The Commissioner argues that the ALJ's decision is amply supported in the record.

### III.

There are no medical opinions in the record from any medical source indicating that Pagans is disabled. Rather, careful review of the medical evidence supports the ALJ's decision that Pagans was not disabled.

The first medical record in the file dates from July 28, 2003, as which time Pagans reported neck, back and hip pain, ongoing since 2001 "when patient was involved in an accident

3

after playing around with some friends and landed on his neck." (R. 101) At that time, Pagans stated that he "wants disability form filled out," (R. 101), yet there is no disability opinion in the record from the doctor Pagans saw on that day. On physical examination, the examining physician, Dr. Natalie Klawonn, indicated that Pagans had a limping gait, decreased range of motion in his head and neck and tenderness to palpation over his cervical spine, but intact strength. Dr. Klawonn noted normal alignment and mobility of the spine, and normal range of motion and strength of the upper extremities and left leg. Dr. Klawonn noted pain in the hip on leg raise, but normal strength. (R. 102-03) From a neurological standpoint, Dr. Klawonn's examination revealed intact reflexes, with the right knee reflex diminished. Motor function, coordination and tone were normal. (R. 103)

Pagans was seen again in October, 2003 for neck pain, and the physical examination noted decreased neck range of motion. Both from a musculoskeletal and neurologic standpoint, the examination was normal, and it was noted that Pagans "can undergo exercise testing and/or participate in exercise program." (R. 99)

There is no medical treatment in the record for the next eight months, until July 24, 2004, when Pagans sought treatment at the emergency room for injuries sustained following a fight where he stated that he was thrown to the ground. Pagans complained of right knee pain and several small lacerations to his right ear. (R. 113-17) Pagans was given a knee brace and was seen thereafter by an orthopedic specialist, who noted full range of motion. X-rays revealed no fractures. (R. 174) Pagans was diagnosed with an attempted patellar dislocation and medial collateral ligament sprain/strain. (R. 162)

4

Case 7:07-cv-00197-mfu   Document 22   Filed 04/02/08   Page 4 of 10   Pageid#: 67

Pagans missed a follow-up appointment regarding his knee in early October, 2004, (R. 169), and when he was seen thereafter on October 15, 2004, he was advised that an MRI showed a partial rupture to his anterior cruciate ligament (ACL) and a femoral bone bruise. (R. 168) Pagans was referred to physical therapy.

Pagans was seen again by an orthopedist on December 10, 2004, and indicated that he was doing a little better. The medical record of that visit states that "He has no current complaints of instability. He does have occasional catching sensation of the knee, that is not isolated medially or laterally, and no real sharp pain associated with this. No locking episode noted. He is having no complaints of swelling. He has a new complaint today. He states he has pain along the medial facet of the patient's patella anytime he squats." (R. 162) Pagans stated that he could not complete physical therapy due to the neck pain it was causing him. It was recommended that Pagans begin a home exercise program and be seen for evaluation by an orthopedic surgeon. (R. 161)

Pagans was seen again concerning his knee on January 3, 2005, at which time he stated that he had done well over the past six weeks. (R. 160) The orthopedist's impression was of mild knee strain, with no arthroscopic surgery indicated. Pagans was instructed on strengthening exercises. Pagans was instructed to return on an as needed basis, but the record does not reflect that he did so.

In addition to the neck and knee problems noted above, the medical records reflect that Pagans hurt both of his hands in separate incidents involving fighting. Pagans was seen by an orthopedist on September 10, 2004 following an episode where he was "shadow boxing" and accidentally hit a glass plate cutting two of his knuckles. (R. 172) Following healing of the

wounds, Pagans was instructed to stretch and exercise his fingers. (R. 171) Pagans broke his fifth finger on his left hand in a fight on July 3, 2005, and his finger was splinted. (R. 150-59)

The medical records note that Pagans began complaining of radiating lower back pain in late August, 2005, and was seen for this complaint in the emergency room several times in late 2005. He was diagnosed with sacroilitis, which is inflammation of the sacroiliac joint, and was prescribed anti-inflammatory and pain medications. Pagans began seeing Dr. Chinnepalli in December, 2005 for right hip and back pain, and physical therapy was ordered. Pagans did not consistently attend his physical therapy sessions and was discharged from physical therapy at his request. (R. 276)

On December 14, 2005, Pagans was treated at the emergency room following an assault in which he was struck multiple times with a closed fist in his face and temple. Pagans also complained of right hip pain. The ER records note that Pagans' right hip was moderately tender, but x-rays of his hip and cervical spine were negative. Also negative were CT scans of his head and cervical spine. Pagans was prescribed pain and muscle relaxant medications and released.

On March 2, 2006, Pagans had surgery to repair a right disk herniation at L5-S1. In a letter written by the neurosurgeon, Dr. Zev Elias, to Dr. Chinnepalli, a month after the surgery, Dr. Elias stated that Pagans "has achieved relief, although not complete resolution, of his right lower extremity pain and numbness. His main complaint is that of 'stiffness' in his lower back." (R. 248) Dr. Elias summarized that "[o]verall, he appears to be doing well and is pleased with the results of his surgery," (R. 248), and prescribed a postoperative exercise program. Apparently, Pagans did not follow through on the prescribed course of physical therapy ("PT"), and he was referred again for PT by Dr. Elias on June 28, 2006. At that time, Dr. Elias noted that

6

Case 7:07-cv-00197-mfu Document 22 Filed 04/02/08 Page 6 of 10 Pageid#: 69

"[m]otor testing of the lower extremities is 5/5 throughout. Straight-leg raise is negative. The lumbar incision is well healed. Gait is normal." (R. 242) Despite this second referral to PT, Pagans again did not complete the prescribed course of treatment. (R. 294, 397)

A Mental Health Evaluation and Intellectual Assessment was performed on Pagans on February 11, 2005. Testing performed indicated that Pagans fell between the mild to light moderate range of depression and his Global Assessment of Functioning ("GAF") was assessed at 59 to 62.[1] As regards employment, the report by Dr. Jeffrey B. Luckett stated that Pagans was employable, could work an 8 hour day and 40 hour week and "would be able to perform simple and some light-some moderate detailed task and would not require special supervision." (R. 121)

This evaluation was followed up by a Psychology Report done by Dr. Marvin A. Gardner, Jr., of the Virginia Department of Social Services, on July 18, 2006. Dr. Gardner concluded that:

> He is capable of performing moderately detailed and moderately complex tasks. His panic symptoms may cause absences upon occasion. This might be reasonably controlled with medication and supportive counseling. There is no current psychological problem which would prevent the performance of work activities on a consistent basis. He would need no special or additional supervision. The claimant's psychological condition should not interrupt his workday or workweek with the exception of occasional panic attacks which once again may be properly controlled with medication and supportive therapy. He is capable of accepting instructions from supervisors. He is also able to interact with co-workers and the

---

[1]The GAF scale ranges from zero to 100 and "[c]onsider[s] psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." Diagnostic And Statistical Manual Of Mental Disorders, Fourth Edition, 32 (American Psychiatric Association 1994). A GAF of 51-60 indicates than an individual has "[m]oderate symptoms . . . OR moderate difficulty in social, occupational or school functioning . . ." Id. A GAF of 61-70 indicates "[s]ome mild symptoms . . . OR some difficulty in social, occupational, or school functioning . . ., but generally functioning pretty well, has some meaningful interpersonal relationships." Id.

7

> public. It would be helpful, however, due to his shy nature, that his
> work with the public be very limited. He is capable of dealing with
> usual work stress.

(R. 345)

Pagans was seen on January 2, 2007 for emotional instability and was prescribed some medications. (R. 368-70) The report of examination from an office visit on January 31, 2007 noted that Pagans "appears much calmer and focused than when last seen." (R. 375)

## IV.

It is clear from this record that Pagans has not met his burden of establishing that he is disabled. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972) There is no medical opinion in the record suggesting that Pagans is disabled, and the ALJ was well justified in relying on the uncontradicted state agency assessments of Pagans' physical and mental residual functional capacity which formed the basis for the hypothetical question posed to the Vocational Expert ("VE") at step five. (R. 125-149)

At oral argument, counsel for Pagans stressed that the ALJ did not properly credit Pagans' testimony at the administrative hearing regarding his functional limitations. (R. 406-09) There Pagans testified that he has to lay down four or five times a day to deal with his back, neck and leg pain. Based on a careful review of the medical evidence in the administrative record, however, the ALJ was plainly correct to find that "there is no objective medical evidence supporting claimant's alleged physical limitations." (R. 20) As detailed above, Pagans' medical history simply does not support the extreme physical limitations he claims. As such, the Commissioner's decision is supported by substantial evidence.

8

In light of conflicting evidence contained in the record, it is the duty of the ALJ to fact-find and to resolve any inconsistencies between a claimant's alleged symptoms and his ability to work. See Smith v. Chater, 99 F.3d 635, 638 (4th Cir. 1996). Accordingly, the ALJ is not required to accept Pagans' subjective allegation that he is disabled by pain, but rather must determine, through an examination of the objective medical record, whether he has proven an underlying impairment that could reasonably be expected to produce the symptoms alleged. Craig v. Chater, 76 F.3d 585, 592-93 (4th Cir. 1996) (stating the objective medical evidence must corroborate "not just pain, or some pain, or pain of some kind or severity, but the pain the claimant alleges she suffers."). Then, the ALJ must determine whether Pagans' statements about his symptoms are credible in light of the entire record. Credibility determinations are in the province of the ALJ, and courts normally ought not interfere with those determinations. See Hatcher v. Sec'y of Health & Human Servs., 898 F.2d 21, 23 (4th Cir. 1989).

After carefully reviewing the entire record, there is no reason to disturb the ALJ's credibility determination. See Shively v. Heckler, 739 F.2d 987, 989-90 (4th Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight). The ALJ was correct to find that Pagans' extreme allegations are not supported by the medical records.

Further, it is clear from the record that the ALJ considered all of the evidence and formulated an appropriate hypothetical question to the VE which fairly set out Pagans' impairments. The record reflects that the ALJ considered all of Pagans' claimed impairments, including both physical and nonexertional impairments, and posed to the VE a comprehensive

9

hypothetical question. The ALJ considered Pagans' impairments in combination in arriving at Pagans' residual functional capacity and crafting an appropriate hypothetical posed to the VE. As such, the ALJ's decision falls well within the analytical framework set out in Walker v. Bowen, 889 F.2d 47, 50-51 (4th Cir. 1989).

In affirming the final decision of the Commissioner, the court does not suggest that Pagans is entirely free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to have resulted in total disability from all forms of substantial gainful employment. It appears that the ALJ properly considered all of the subjective and objective factors in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence.

For the reasons stated above, the court affirms the final decision of the Commissioner and grants defendant's motion for summary judgment.

The Clerk is directed to send certified copies of this opinion to all counsel of record.

Enter this 2nd day of April, 2008.

_____
Michael F. Urbanski
United States Magistrate Judge